UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 07-cr-40006-JPG-02 |
| DAVID T. MORROW, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant David T. Morrow's motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 575). The Government has responded (Docs. 577 & 587), and Morrow has replied to the response and its supplement (Doc. 580, 581, 592, & 593). To the extent that other filings in this case have addressed compassionate release, the Court assures the parties it has considered them.

**I.      Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>    (1) in any case—
>       (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt

> of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

As for the final clause, there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2).[1] The application notes further define "extraordinary and

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

2

compelling reasons" to include, as relevant for this case:

    **(A)**     **Medical Condition of the Defendant.—**
          (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).   A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.   Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
          (ii)     The defendant is—
                (I)     suffering from a serious physical or medical condition,
                (II)     suffering from a serious functional or cognitive impairment, or
                (III)     experiencing deteriorating physical or mental health because of the aging process,
          that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    \* \* \*

    **(D)**     **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release.   18 U.S.C. § 3582(c)(1)(A).   The Court has discretion to grant compassionate release.   *Gunn*, 980 F.3d at 1180.   The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis.   *Id.*   The Court now turns to the specifics of the defendant's case.

---

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

**II.     Analysis**

In August 2007, a jury found Morrow guilty on one count of conspiracy to distribute more than 50 grams of crack cocaine and one count of maintaining a residence for the purpose of distributing crack cocaine. It rendered a special verdict finding beyond a reasonable doubt that the defendant conspired to distribute 50 grams or more of crack cocaine (Doc. 111). At the defendant's second sentencing—his first sentence was reversed for insufficient explanation—the Court adopted the presentence investigation report's relevant conduct finding of 4.88 kilograms of crack cocaine, *see* PSR ¶ 28, which under U.S.S.G. § 2D1.1 (2007) yielded a base offense level of 38. The defendant's offense level was increased by 2 points under U.S.S.G. § 2D1.1(b)(1) because he possessed a dangerous weapon and by 4 points under U.S.S.G. § 3B1.1(a) because the defendant was an organizer or leader of criminal activity involving five or more participants (the Court actually noted far more than five). This established a total offense level of 43 (actually 44, but the sentencing table only goes up to 43), where the range is a life sentence. The Court departed downward from the life sentence guideline range and sentenced the defendant to 504 months in prison.

In selecting this sentence, the Court considered Morrow's poor health—including diabetes, stomach ulcers, left leg amputation and anticipated right foot amputation, kidney disease requiring dialysis, and a history of a gunshot wound—but noted that these problems existed when Morrow committed his drug crimes. In fact, the Court of Appeals reversed the Court's original sentence of the defendant because it did not adequately explain how it took into consideration his health concerns at sentencing. *See United States v. Harris*, 567 F.3d 846, 855 (7th Cir. 2009). At the resentencing, the Court was careful to fully explain its consideration of Morrow's health problems. The Court of Appeals affirmed the 504-month sentence imposed at

the second sentencing. *See United States v. Morrow*, 418 F. App'x 537, 539 (7th Cir. 2011). The Court later reduced Morrow's sentence to 360 months pursuant to the § 404 of the First Step Act (Doc. 595).

Now, after having served nearly 14 years of his 30-year sentence, Morrow comes to the Court complaining of many of the same health conditions the Court considered when it sentenced him, but his health conditions have worsened somewhat and he now faces the COVID-19 pandemic. In addition to the conditions he suffered at the time of his sentencing, Morrow has had more of his left leg and a toe from his right foot amputated, and he suffers from end-stage kidney disease (stage three), hypertension, and a sleep disorder. Further, he is obese and confined to a wheelchair. He points to the COVID-19 pandemic for which he is at high risk because of his compromised physical condition, his positive accomplishments in prison (of which the Court took note when granting him a reduction in sentence under § 404 of the First Step Act), and his lack of any history of violent crimes. He argues that the § 3553(a) factors counsel in favor of his immediate release or, in the alternative, he seeks an order for the BOP to place him on home confinement for the remainder of his sentence.

In supplemental response, the Government concedes that Morrow's chronic kidney disease amounts to an extraordinary or compelling reason for release but argues that he should not be released because of the applicable factors in 18 U.S.C. § 3553(a) weigh against it. Specifically, the Government argues that Morrow is still a danger to the community and that the Court already adequately considered Morrow's health conditions under § 3553(a) when it sentenced him. The Government also points to the extraordinary measures the BOP has taken to protect its staff and inmates from the virus while still achieving the agency's mission. It argues that if Morrow were to contract COVID-19, he is already in a medical center, the which can treat

the disease.[3]

As for the defendant's physical condition, the Court does not dispute that he suffers from a serious health condition that likely amounts to extraordinary and compelling reasons for compassionate release and that the coronavirus exacerbates the health danger he faces in prison.. However, Morrow remains a danger to the safety of others in the community.   As the Court noted at his sentencing, he was able to commit his criminal drug offenses even in a fragile health condition similar to his current condition.   In light of his extensive criminal history and intense involvement in the offense of conviction, his current sentence is appropriate and necessary to achieve the goals of sentencing.

The Court's analysis of the § 3553(a) factors at Morrow's sentencing hearings continue to apply now, and to the extent anything material has changed since then, the Court reflected that in its decision to reduce Morrow's sentence from 504 to 360 months.   Morrow maintains he is no longer a danger because he was never convicted of a crime of violence, but several of his crimes, including the instant offense, involved firearms connected to criminal activity, not a far cry from violence.   And while Morrow has done much while incarcerated to pursue a second career in business and/or as a paralegal, the fact remains that from age 8 or 9 to the time of his incarceration, he was involved with selling drugs, and if released now, he would be heading back to the same county in which he used to live and deal drugs.   The Court hopes Morrow has moved on from that life, but believes the chance he would again pick up his drug dealing and gun use is too great to release him now and would undermine the gravity of his very serious

---

[3] The Government does not invoke Morrow's failure to exhaust administrative remedies before filing this lawsuit, so the Court considers that issue forfeited.   *See Gunn*, 980 F.3d at 1179.

criminal offense.  His current sentence of 360 months in prison remains necessary to protect the public from his crimes and serve the other purposes of sentencing, even when balanced against his fragile health condition.

As for the COVID-19 pandemic, the Court acknowledges the particular danger posed to prisoners, who live in close quarters and often cannot practice social distancing.  "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  The Court finds that the pandemic does not constitute an extraordinary and compelling reason for immediate compassionate release for Morrow, even in combination with his health status.  In prison, Morrow has medical providers available to tend to his health needs, and the BOP is taking measures to prevent the spread of the disease within its prison facilities.  The Court notes, however, that the BOP is in the process of vaccinating inmates against COVID-19.  Although it will not order Morrow released at this time, it strongly recommends he be given a high priority in the BOP's vaccination efforts.

Morrow proposes as an alternative to immediate compassionate release—that the Court order him to serve the remainder of his sentence on home confinement.  The Court does not have the jurisdiction to do that.  "After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."  *United States v. Wilson*, 503 U.S. 329, 335 (1992).  The BOP then has "plenary control" placement of the inmate, subject only to statutory limits.  *Tapia v. United States*, 564 U.S. 319, 331 (2011); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021).  This includes the decision whether to house an inmate in a prison or in home confinement, 18 U.S.C. § 3624(c)(2), and the Court has no jurisdiction to review that decision, 18 U.S.C. § 3621(b) ("Notwithstanding any

other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."). *Saunders*, 986 F.3d at 1078 (noting that a court lacks authority to change an inmate's place of imprisonment, although it may recommend a different placement). The defendant may seek relief from the BOP by filing an administrative remedy, but the Court cannot help him.

### III.    Conclusion

For all of these reasons, the Court **DENIES** Morrow's motion for compassionate release (Doc. 575) but **STRONGLY RECOMMENDS** the BOP give him high priority for the COVID-19 vaccine. The Court also encourages Morrow to reapply to the warden for compassionate release or for home confinement should his circumstances materially change for the better or the worse.

**IT IS SO ORDERED.**
**DATED:   March 24, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
