UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 07-cr-40006-JPG-02 |
| DAVID T. MORROW, | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant David T. Morrow's second motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 618). The Government has responded by moving to dismiss Morrow's motion for failure to exhaust administrative remedies before filing the motion (Doc. 623), and Morrow has responded to that motion (Doc. 625).

**I.    Compassionate Release**

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>     (1) in any case—
>         (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

>administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>(i) extraordinary and compelling reasons warrant such a reduction. . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

## II.   Exhaustion of Administrative Remedies

The failure to exhaust is an affirmative defense that must be asserted by the Government or will be waived.  *Gunn*, 980 F.3d at 1179.

The exhaustion of remedies portion of this statute provides that the defendant may file a motion for compassionate release after the earlier of two events:  (1) "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  As a practical matter, (2) will almost always provide the relevant exhaustion mark because it is virtually impossible to exhaust the BOP's comprehensive administrative remedy process within 30 days.  Thus, the Court asks whether the defendant waited 30 days after the warden received his request before filing this motion.

The 30-day period is a mandatory claim-processing rule that must be enforced by the Court if the Government raises it.  *Sanford*, 986 F.3d at 782.  Although the Court has the power to waive some exhaustion requirements, it cannot waive this one because it was specifically mandated by Congress in the statute.  *Id.* (noting that "may not modify a term of imprisonment" is language of a mandatory claim-processing rule that must be enforced); *see McCarthy v. Madigan*, 503 U.S. 140,

144 (1992) (PLRA exhaustion requirement); *Ross v. Blake*, 578 U.S. 632, 638-39 (2016) (same).

Additionally, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release. *United States v. Williams*, 62 F.4th 391, 393 (7th Cir. 2023); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request.

Thus, where an inmate has not satisfied either option for exhausting his administrative remedies for compassionate release—citing the same "extraordinary and compelling" reasons in his motion—*before* filing his motion, the Court must deny the defendant's motion without prejudice to another motion filed *after* exhaustion. *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).

Here, the defendant, still technically in BOP custody, resides in a halfway house managed for the BOP by the Nashville, Tennessee, Residential Reentry Management ("RRM") field office. He has been there since September 2021 as part of his sentence of imprisonment. The Government asserts that Morrow is still required to ask the director of his halfway house to file a motion for compassionate release for him and that he has not provided evidence of such exhaustion. Morrow counters by submitting an affidavit from his counselor at the halfway house stating that sometime around May 2024, Morrow orally inquired about the process of requesting compassionate release in his halfway house. The director of the halfway house told him to file a motion with the Court.

To the extent the exhaustion requirement applies to inmates in halfway houses, the Court believes that, in Morrow's circumstances, his oral inquiry to the director more than 30 days ago and the director's instruction to file a motion with the Court effectively satisfied the obligation to exhaust administrative remedies. While 28 C.F.R. § 571.61(a) expresses a preference for a written request, it does not mandate one. The halfway house director was surely aware of Morrow's

3

serious health condition which had resulted in numerous hospital stays and amputations. Where Morrow's health condition was apparent to the director, his oral inquiry allowed the halfway house director the opportunity to consider his request, which is one of the main purposes of the exhaustion requirement. *See United States v. McWhorter*, No. 09-CR-30046-JPG, 2021 WL 1948341, at *3 (S.D. Ill. May 14, 2021) ("The grievance accomplished its purpose of notifying the BOP of the problem and inviting corrective action."). The Court will therefore deny the Government's motion to dismiss Morrow's motion for failure to exhaust (Doc. 623) and will turn to the merits of the motion.

### III.  Compassionate Release Motion

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2) (2023).[2] The policy statement further defines "extraordinary and compelling reasons" to include, alone or in combination, as relevant for this case:

> **(1) Medical Circumstances of the Defendant.**—
>     **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>     **(B)** The defendant is—
>         **(i)** suffering from a serious physical or medical condition,
>         **(ii)** suffering from a serious functional or cognitive impairment, or
>         **(iii)** experiencing deteriorating physical or mental health because of the aging

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

>   process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
> **(D)** The defendant presents the following circumstances—
>> **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>> **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>> **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b) (2023). The guideline further states that the rehabilitation of the defendant cannot, by itself, be an extraordinary and compelling reason, but it may be considered in connection with other reasons in determining whether and to what extent the Court should grant a reduction. U.S.S.G. § 1B1.13(d) (2023).

Thus, for a defendant to be eligible for a § 3582(c)(1)(A) sentence reduction, he must have exhausted his administrative remedies, and the Court must find that (1) extraordinary and compelling reasons for a reduction exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant a reduction. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180. The Court must ensure that any reduction complies with U.S.S.G. § 1B1.13 (2023).

The Court begins with a summary of Morrow's case taken from the Court's March 2021 ruling on Morrow's first motion for compassionate release:

> In August 2007, a jury found Morrow guilty on one count of conspiracy to distribute more than 50 grams of crack cocaine and one count of maintaining a residence for the purpose of distributing crack cocaine. It rendered a special verdict finding beyond a reasonable doubt that the defendant conspired to distribute 50 grams or more of crack cocaine (Doc. 111). At the defendant's second sentencing—his first sentence was reversed for insufficient explanation—the Court adopted the presentence investigation report's relevant conduct finding of 4.88 kilograms of crack cocaine, *see* PSR ¶ 28, which under U.S.S.G. § 2D1.1 (2007) yielded a base offense level of 38. The defendant's offense level was increased by 2 points under U.S.S.G. § 2D1.1(b)(1) because he possessed a dangerous weapon and by 4 points under U.S.S.G. § 3B1.1(a) because the defendant was an organizer or leader of criminal activity involving five or more participants (the Court actually noted far more than five). This established a total offense level of 43 (actually 44, but the sentencing table only goes up to 43), where the range is a life sentence. The Court departed downward from the life sentence guideline range and sentenced the defendant to 504 months in prison.
>
> In selecting this sentence, the Court considered Morrow's poor health—including diabetes, stomach ulcers, left leg amputation and anticipated right foot amputation, kidney disease requiring dialysis, and a history of a gunshot wound—but noted that these problems existed when Morrow committed his drug crimes. In fact, the Court of Appeals reversed the Court's original sentence of the defendant because it did not adequately explain how it took into consideration his health concerns at sentencing. *See United States v. Harris*, 567 F.3d 846, 855 (7th Cir. 2009). At the resentencing, the Court was careful to fully explain its consideration of Morrow's health problems. The Court of Appeals affirmed the 504-month sentence imposed at the second sentencing. *See United States v. Morrow*, 418 F. App'x 537, 539 (7th Cir. 2011). The Court later reduced Morrow's sentence to 360 months pursuant to the § 404 of the First Step Act (Doc. 595).

Mem. and Order 4-5 (Doc. 601). In December 2024, President Biden commuted Morrow's sentence as of April 11, 2025, his current release date (Doc. 626).

In the Court's prior order, it found that Morrow's numerous serious health conditions likely amounted to extraordinary and compelling reasons for compassionate release. The Court reaches the same conclusion here for the same reasons—and the worsening of those health conditions that have required further amputations—as its March 2021 order, even without the prevalence of COVID-19. Morrow has presented extraordinary and compelling reasons for release because of his medical circumstances.

However, for the same reasons set forth in that order, the Court finds Morrow remains a danger to the safety of others in the community. As the Court noted at his sentencing, he was able to commit his criminal drug offenses even in a fragile health condition similar to his current condition, he has an extensive criminal history, and he was intensely involved in the offense of conviction. The Court still believes that the sentence Morrow was serving prior to his sentence commutation, 360 months, is appropriate and necessary to achieve the goals of sentencing.

Nevertheless, the Court recognizes President Biden's independent judgment that Morrow is no longer a danger to society and the individuals in it. Were the Court to agree, which it does not, it would grant Morrow compassionate release and would reduce his sentence to no less than time served as April 11, 2025. Whether the Court or President Biden is right will be revealed by Morrow's performance on supervised release.

## IV. Conclusion

For all of these reasons, the Court **DENIES** Morrow's motion for compassionate release (Doc. 618) and **DENIES** the Government's motion to dismiss Morrow's motion (Doc. 623).

**IT IS SO ORDERED.**
**DATED:   March 25, 2025**

                                                      s/ J. Phil Gilbert
                                                      **J. PHIL GILBERT**
                                                      **DISTRICT JUDGE**